In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO.  09-12-00247-CR
_____

MARK RANDALL BRISTER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 128th District Court
Orange County, Texas
Trial Cause No. A-090719-R

## OPINION

In this appeal, Mark Randall Brister contends the evidence is legally insufficient to support the jury's conclusions that he operated a motor vehicle while intoxicated and that he used a deadly weapon in the commission of the offense. We hold the evidence is sufficient to support the jury's finding that he was intoxicated while operating a vehicle in a public place; however, we hold the evidence does not support a conclusion that any rational trier of fact could have found the legal elements of using the vehicle as a deadly weapon beyond a

1

reasonable doubt and we strike that portion of the judgment. We affirm the trial court's judgment as modified.

## Background

A jury convicted Brister of driving while intoxicated, an offense that occurred on or about October 17, 2008. Prior to trial, Brister stipulated that he was guilty of having committed two prior offenses of driving while intoxicated. In the punishment phase of the trial, Brister pled true to the enhancement paragraphs, establishing that he was guilty of committing two prior felonies. At the conclusion of the punishment hearing, the jury assessed a sentence of forty years in prison, and the trial court then pronounced a forty year sentence.

In two issues, Brister challenges the sufficiency of the evidence to support the verdict of guilt and the deadly weapon finding. We review all of the evidence in the light most favorable to the verdict and determine if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). In reviewing the evidence, we give deference to the jury's responsibility to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from facts. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

## Evidence

Officer Donathan Warner testified that he stopped Brister on Highway 12 after observing him cross his lane into "[o]ncoming traffic." According to Officer Warner, there were "[v]ery few, if any, cars on the roadway[]" at that time of night. After stopping Brister, Officer Warner noted Brister was unsteady on his feet when exiting his car, smelled strongly of alcohol, and had slurred speech and bloodshot eyes. Officer Warner decided not to require that Brister perform field sobriety tests because Brister "was so intoxicated I figured that he may fall while trying to stand on his own."

When Officer Warner placed Brister under arrest, Brister resisted by pulling away and asking questions about "why I was doing what I was doing." Brister was very agitated during the stop, requiring Officer Warner to force Brister onto the ground to cuff him, which resulted in Brister receiving a small abrasion to his forehead. Before taking Brister to jail, an ambulance was summoned; when the ambulance arrived, Brister refused treatment.

According to Officer Warner, Brister was belligerent during the entire stop. The jury heard that during an inventory search of Brister's car, Officer Warner found an ice chest that contained five beers, and he noted their presence on the

3

automobile impound inventory sheet. According to Officer Warner, Brister was intoxicated.

Detective James Blankenship took Brister to jail. Detective Blankenship testified that Brister had glassy, bloodshot eyes, and a strong odor of alcohol on his breath. According to Detective Blankenship, Brister was "[e]xtremely agitated, belligerent[,]" and "[u]nsteady on his feet[.]" Brister refused to get into Detective Blankenship's vehicle and had to be pushed in; Brister continued to curse during the fifteen minute trip to jail. According to Detective Blankenship, when being given various warnings that concern the consequences of failing to voluntarily provide a specimen at the jail, Brister continued to scream and use profanity. Due to Brister's belligerence, Detective Blankenship stated that he chose not to conduct any field sobriety tests.

Officer Jonathan Baggett explained that he was asked to go to the jail to assist in the process of booking Brister into jail. When he arrived, he saw Brister yelling and cursing. According to Officer Baggett, Brister was highly agitated and smelled strongly of alcohol. He also noticed that Brister constantly swayed back and forth and that Brister refused to remain on the spot in the intoxilyzer room where he had been told to stand.

4

Officer Warner did not make a videotape of Brister's stop because the camera in his patrol vehicle was not working properly. Also, because the tape recorder at the jail failed to function properly, only a portion of Brister's interview at the jail was recorded. The brief recording captured on the video from Brister's booking process confirms that Brister's speech was slurred and that he was agitated and cursing.

Two witnesses, Detective Blankenship and Detective L.B. Cupit, testified that the type of car Brister was driving is capable of causing serious bodily injury or death. However, neither detective saw Brister while he was driving on the night he was stopped.

Brister called one witness during the guilt-innocence phase of his trial. Brister's employer, Rose Mary Pipps, testified that Brister quit drinking approximately eight months before the offense occurred. According to Rose, she saw Brister almost every day in the eight months before the offense but had never seen him drinking. Rose also explained that Brister worked for her six days a week and lived near her home. On cross-examination, Rose agreed that Brister was not working for her on the date of the offense, October 17, 2008, and she agreed that she had not seen him on October 17. Rose also agreed that Brister did not have a

problem with his balance or his speech, that Brister was not loud or argumentative, and that he was normally clear-eyed.

Intoxication

To prove that a person is guilty of driving while intoxicated, the State must prove that the defendant was intoxicated while operating a motor vehicle in a public place. Tex. Penal Code Ann. § 49.04(a) (West Supp. 2012). "'Intoxicated'" means not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body or having an alcohol concentration of 0.08 or more. *Id.* § 49.01(2)(A), (B) (West 2011). Circumstances raising an inference of intoxication when driving include "erratic driving, post-driving behavior such as stumbling, swaying, slurring or mumbling words, inability to perform field sobriety tests or follow directions, bloodshot eyes, [and] any admissions by the defendant concerning what, when, and how much he had been drinking[.]" *Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010).

Brister argues the evidence is insufficient due to a lack of objective clues showing that he was intoxicated—the types of clues typically provided by field sobriety tests. But, although the standard field sobriety tests were not performed

6

and the record does not contain testimony about them, the record does contain substantial evidence raising a reasonable inference that Brister did not have the normal use of his faculties when he was stopped. For example, the jury could accept as credible Officer Warner's testimony that Brister failed to remain in his lane of traffic, and that he exhibited the types of signs that are associated with intoxication. In Brister's case, the record contains circumstances tending to show intoxication that includes testimony by officers that Brister had bloodshot eyes, smelled strongly of alcohol, had slurred speech, exhibited poor balance, and showed belligerence during and after the stop. Officer Warner's observations about Brister supports Warner's opinion that Brister was intoxicated, and the jury's finding is further supported by the testimony and opinions of the other officers who observed Brister after his arrest. When based upon facts an experienced officer observes and then describes to the jury, an officer's opinion concerning a person's intoxication provides sufficient evidence of intoxication. *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979).

The brief video admitted into evidence, which depicts Brister having slurred speech and acting in a belligerent manner, further supports the jury's conclusion that Brister was intoxicated. The testimony of Brister's employer, explaining that Brister did not normally have blood-shot eyes and that Brister did not have

7

problems with his speech or balance reinforces the jury's conclusion that on the night of the offense, Brister did not possess the normal use of his mental and physical faculties.

Having carefully reviewed the record, we conclude the jury's finding that Brister was driving his car in a public place while intoxicated is supported by legally sufficient evidence. *See* Tex. Penal Code Ann. §§ 49.01(2)(A), 49.04(a). We overrule issue one.

Deadly Weapon

In determining whether the evidence is legally sufficient to support a deadly weapon finding, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 894-95. Under this standard, evidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *In re Winship*, 397 U.S. 358, 361 (1970); *Brooks*, 323 S.W.3d at 899; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009);

8

*Williams*, 235 S.W.3d at 750. Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 n.11, 320; *Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

This standard gives full play to the responsibility of the factfinder to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*. 443 U.S. at 319. An appellate court determines whether the necessary inferences are reasonable upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State,* 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and defer to that determination. *Jackson,* 443 U.S. at 326. Our duty, as a reviewing court, is not to reweigh the evidence from reading a cold record but to act as a "'due process safeguard ensuring only the rationality

9

of the factfinder.'" *Williams v. State*, 937 S.W.2d 479, 483 (Tex. Crim. App. 1996) (quoting *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995)).

The gravamen of the offense of driving while intoxicated is the operation of a motor vehicle upon the roadways while intoxicated, which creates an obvious danger to the public. "An automobile can be a deadly weapon if it is driven so as to endanger lives." *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003). To establish a deadly-weapon finding, the State must demonstrate that: (1) the object was something that in the manner of its use or intended use was capable of causing death or serious bodily injury; (2) the weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were actually endangered. *Drichas v. State*, 175 S.W.3d 795, 797 (Tex. Crim. App. 2005); *see also Garza v. State*, 298 S.W.3d 837, 843 (Tex. App.— Amarillo 2009, no pet.) (citing *Cates*, 102 S.W.3d at 738).

A deadly-weapon finding is justified if a rational jury could have concluded that the appellant's vehicle posed an actual danger of death or serious bodily injury. *Sierra v. State*, 280 S.W.3d 250, 254, 256-57 (Tex. Crim. App. 2009). An actual danger means one that is not merely hypothetical. *Drichas*, 175 S.W.3d at 797-98. In *Drichas*, the Texas Court of Criminal Appeals described the type of evidence needed to support a deadly-weapon finding. *See id.* at 799. The Court

10

wrote that the statute "does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle[.]" *Id.* "The volume of traffic on the road is relevant only if no traffic exists." *Id.* "Capability is evaluated based on the circumstances that existed at the time of the offense." *Id.* The Court explained that "a deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." *Id.*

The Court rejected the notion that every defendant charged with evading arrest or detention should also be charged with using a vehicle as a deadly weapon. *Id.* The Court characterized the determination of whether a deadly-weapon finding is justified as "a fact-specific inquiry" and recognized that the facts will not always support such a finding. *Id.* Therefore, we examine the record for evidence demonstrating that others were present when the reckless driving occurred. *See Foley v. State*, 327 S.W.3d 907, 916-17 (Tex. App.—Corpus Christi 2010, pet. ref'd); *Williams v. State*, 946 S.W.2d 432, 435 (Tex. App.—Fort Worth 1997), *aff'd in part, rev'd in part*, 970 S.W.2d 566 (Tex. Crim. App. 1998) (reversing the jury's deadly weapon finding and concluding that to find a vehicle capable of causing death or serious bodily injury the evidence must show that there was

11

someone present who was placed in danger of serious bodily injury or death when the DWI offense occurred).

The evidence in this case shows Officer Warner conducted a traffic stop in the early morning hours on Highway 12 in Orange County, Texas, after he observed a vehicle being operated by Brister crossing the lane of traffic into the "on bound traffic" or "oncoming traffic." At the place of the stop, Highway 12 is a two-lane roadway. According to Officer Warner, there were "[v]ery few, if any, cars on the roadway[]" at that time of night. Officer Warner did not recall how long he had followed Brister before he observed the traffic violation. The patrol car was equipped with a video recorder that was set to automatically record through the front windshield of the patrol car whenever the officer activated his emergency lights. However, Officer Warner testified the equipment failed during this particular traffic stop. Officer Warner testified that Brister crossed over the center line only one time. At all times after Officer Warner activated his emergency lights, he observed Brister drive in a single lane and come to a stop in a normal distance in a convenience store parking lot. The officer characterized Brister's driving from the time he activated his emergency lights until Brister stopped as "normal driving." The State offered no further evidence regarding the manner in which Brister was operating his vehicle at the time of the offense.

12

For a jury to find that Officer Warner's testimony that he observed Brister's vehicle cross his lane into "oncoming traffic" sufficient to sustain a finding of a deadly weapon, the jury would have had to infer from this statement "that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." Before making a traffic stop, an officer must have reasonable suspicion that some crime was, or is about to be committed. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). When an officer observes a driver commit a traffic offense, reasonable suspicion exists to justify stopping the driver. *See Arizona v. Johnson*, 555 U.S. 323, 331 (2009). Officer Warner's testimony that Brister "violated a traffic law by crossing the lane of traffic into the on bound traffic" was elicited to prove that Officer Warner had reasonable suspicion to make the initial traffic stop. The State offered no evidence to attempt to show that Brister's operation of the vehicle during the offense put another person or motorist in actual danger. While recognizing no evidence is presented in closing argument, a review of the record shows that in its closing argument, the State did not discuss or point to any evidence of Brister's operation of his vehicle on the evening in question and did not otherwise discuss the deadly weapon issue with the jury.

In *Cates*, the Court of Criminal Appeals reversed a jury's deadly weapon finding on a conviction for failing to stop and render aid. 102 S.W.3d at 738-39. Noting that the gravamen of that offense is leaving the scene of the accident, the Court found the evidence showed there was no other traffic on the roadway at the time Cates left the scene, the vehicle never left the roadway, and there was no evidence offered by the State that anyone was actually endangered by the vehicle while it left the scene. *Id.* at 738. "To sustain a deadly weapon finding requires evidence that others were endangered, and not merely a hypothetical potential for danger if others had been present." *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). In *Foley*, while there were businesses close to the accident scene and persons inside those buildings, the Court rejected a deadly weapon finding when there was no evidence in the record that there were other persons or vehicles at the same "time and place" as Foley. 327 S.W.3d at 917 ("Although Foley's driving may have been reckless or dangerous, it could not cause death or serious bodily injury to others because no other persons or vehicles were in the immediate vicinity of Foley's crash.")

Here, we have testimony that Brister's car crossed the center line one time and nothing further. Officer Warner's testimony that Brister's car crossed into "oncoming traffic" amounts to, at most, a mere "modicum" of evidence probative

of the deadly weapon element. *See Jackson*, 443 U.S. at 314, 318 n.11. In light of Officer Warner's further testimony that there were "[v]ery few, if any, cars on the roadway[,]" the only reasonable inference that can be drawn is that Brister crossed the center line into the lane of "oncoming traffic" and not into the path of an oncoming car. On this record, no reasonable inference arises that Brister used the motor vehicle as a deadly weapon on the night in question because the State failed to show that Brister's use of his motor vehicle placed others in actual danger of death or serious bodily injury. *See Pointe v. State*, 371 S.W.3d 527, 532 (Tex. App.—Beaumont 2012, no pet.) (recognizing that "[w]hile a jury may draw multiple reasonable inferences from the evidence, it cannot draw conclusions based on speculation.") (citing *Hooper*, 214 S.W.3d at 16). The State failed to present evidence from which a reasonable jury could conclude beyond a reasonable doubt that people were actually endangered by Brister's operation of the vehicle during the offense. *See Foley*, 327 S.W.3d at 917; *Drichas*, 175 S.W.3d at 798. The record evidence, viewed in a light most favorable to the prosecution, does not support a conclusion that a rational trier of fact could have found the legal elements of using the vehicle as a deadly weapon beyond a reasonable doubt. We sustain issue two and strike that portion of the judgment wherein the trial court finds that the defendant used or exhibited a deadly weapon, namely, a vehicle, during the

commission of a felony offense, and affirm the judgment as modified. *See*

*Williams*, 970 S.W.2d at 566.

AFFIRMED AS MODIFIED.

_____
CHARLES KREGER
Justice

Submitted on August 30, 2013
Opinion Delivered October 16, 2013
Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

16

DISSENTING OPINION

Because I do not agree with the majority's conclusion that the evidence was legally insufficient to support the jury's finding that Brister exhibited or used his automobile as a deadly weapon, I respectfully dissent.

According to the majority's opinion, "[t]he State failed to present evidence from which a reasonable jury could conclude beyond a reasonable doubt that people were actually endangered by Brister's operation" of his automobile "during the offense." In my opinion, the majority finds the evidence legally insufficient by reweighing the evidence and viewing it in a neutral light, not the light most favorable to the jury's verdict. The Court of Criminal Appeals has explained: "Viewing the evidence 'in the light most favorable to the verdict' under a legal-sufficiency standard means that the reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the **sole** judge of the witnesses' credibility and the weight to be given their testimony." *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

With respect to the evidence, the jury heard evidence regarding the manner Brister used his automobile as well as evidence that Brister's automobile, given the manner it was used, was capable of causing a death or a serious bodily injury. With respect to the manner that Brister drove his automobile, Officer Warner testified

17

that he saw Brister cross into oncoming traffic—an observation that allowed the jury to conclude Brister was driving recklessly. *See Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009). With respect to whether Brister's automobile was capable of causing death or serious injury, Detective Blankenship and Detective Cupit testified that the type of car Brister was driving is capable of causing serious bodily injury or death. The majority has not taken issue with these aspects of the jury's verdict.

The majority strays from its task of reviewing the evidence in the light most favorable to the verdict because it weighs whether the amount of traffic created a probability of injury. In reweighing the testimony, the majority puts great weight on Officer Warner's testimony there was little to no traffic. However, the question that should be the focus of the court's analysis is whether, given the presence of any traffic that existed, Brister's automobile was *capable* of causing death or serious bodily injury. *See Drichas v. State*, 175 S.W.3d 795, 799-800 (Tex. Crim. App. 2005) ("[A] deadly weapon finding is appropriate on a sufficient showing of actual danger, such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner."). Instead of looking at Officer Warner's testimony in the light most favorable to the verdict, the majority weighs the testimony that there was generally

18

little or light traffic more heavily than the testimony that Brister drove into "oncoming traffic," testimony that reasonably suggests the presence of some traffic when the offense occurred.

With respect to reviewing sufficiency challenges to deadly weapon findings in cases involving automobiles, the Court of Criminal Appeals has explained that driving while intoxicated is actually dangerous only if the conduct creates a danger to pedestrians or other motorists present on the roadway. *See id.* at 799. Under *Brooks*, the jury is the sole judge of the weight to be given to the testimony of the witnesses. 323 S.W.3d at 899. In my opinion, the danger to the traffic that Officer Warner saw on the roadway, even if it was only one other automobile, when coupled with Officer Warner's testimony that Brister drove into oncoming traffic, is legally sufficient evidence to support, beyond reasonable doubt, the jury's conclusion that another motorist was actually placed in danger of death or serious bodily injury due to Brister's reckless conduct. *See Drichas*, 175 S.W.3d at 798. Because the majority reweighs the testimony to reach a conclusion that contradicts the jury's verdict, I do not join in the court's opinion; instead, in my opinion, the court should affirm the jury's finding that Brister was driving while intoxicated, affirm the jury's finding that Brister used or exhibited his automobile as a deadly weapon, and affirm the trial court's judgment.

_____
HOLLIS HORTON
Justice

Dissent Delivered
October 16, 2013

20