CHARLES KREGER, Justice
Delbert Ray Clark, Jr. was indicted for the offense of evading arrest or detention with a motor vehicle, a third-degree felony. See Tex. Penal Code Ann. § 38.04(a), (b) (West 2016). The indictment included an allegation that Clark used a motor vehicle as a deadly weapon. See Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2018). The indictment also contained an enhancement paragraph regarding his prior felony convictions. See generally Tex. Penal Code Ann. § 12.42 (West Supp. 2018).
Clark entered an open plea of guilty to the offense of evading arrest or detention with a motor vehicle and pled true to the prior felony convictions but contested the charge that he used a motor vehicle as a deadly weapon. The deadly weapon issue *370 and punishment were tried to the court. The trial court made an affirmative finding on the deadly weapon issue. The third-degree felony of evading arrest or detention with a motor vehicle was enhanced to a second-degree felony due to Clark's prior felony convictions, and the trial court sentenced Clark to ten years confinement in the Institutional Division of TDCJ.
In a single issue on appeal, Clark argues the evidence was insufficient to support the trial court's affirmative finding that he used a motor vehicle as a deadly weapon since no person was placed in actual danger by his motor vehicle during the commission of the charged offense. We sustain his issue and modify the judgment accordingly.
Background
Clark admitted to evading arrest or detention, and video evidence captured the event in its entirety. The disputed issue in this case is whether Clark used his vehicle as a deadly weapon during the offense of evading arrest or detention.
The Montgomery County Deputy Constable who made the arrest testified that on the night of July 15, 2017, he was working an approved extra employment assignment for a granite company in Conroe in a marked patrol car and in full uniform. The officer testified he observed headlights coming down the road which caught his attention, because he knew no one was supposed to be in that area. The officer explained there was only one house at that end of the road, and multiple law enforcement agencies had recently raided it. The officer testified that as the vehicle approached a stop sign, he turned on the headlights of his patrol car. He observed the vehicle suddenly stop, the driver's side door open, and then the car reverse very quickly. The officer spotlighted the car to try to determine the identity of the driver. He testified that he had not yet turned on his overhead patrol lights, only his headlights, and continued to monitor the driver's movements.
According to the officer, the vehicle then accelerated at a high rate of speed, ran a stop sign, and turned left, traveling directly towards the officer. The officer described Clark's driving as "very erratic and reckless." As Clark drove off the road toward some mailboxes, placing the officer directly in Clark's path and in danger of being hit on his driver's side door, the officer took evasive action by quickly reversing his patrol car. The officer testified that Clark's vehicle would have struck him if he had not moved. When Clark passed the officer's patrol car, Clark's vehicle had already reentered the roadway. The officer then activated his overhead patrol lights as Clark's vehicle passed in front of the patrol car. There was no evidence offered that the arresting officer attempted to stop or detain Clark at any time before Clark's vehicle passed by the officer's patrol car.
After the officer turned on his overhead patrol lights, Clark continued to accelerate and tried to evade him. According to the officer, Clark ran a stop sign and accelerated at a high rate of speed down the road until the vehicle ran another stop sign and "wrecked out." The speed limit was 30 miles per hour on the road where Clark was driving, and the officer testified he paced Clark at approximately 60 miles per hour. The officer indicated the chase occurred in a residential area, and Clark traveled about a mile from where he fled. Once Clark wrecked into a ditch, he jumped out of the driver's door and ran a short distance before he stopped and was apprehended. According to the officer, Clark admitted that the officer scared him when he spotlighted him, which was why he fled.
*371 On cross-examination, the arresting officer agreed that he did not have his overhead patrol lights on when Clark passed by his patrol car but that he turned on his overhead patrol lights as Clark passed in front of the patrol car. The arresting officer denied that Clark was trying to evade him when the officer first activated his overhead patrol lights; instead, it was the officer's opinion that Clark became aware he was trying to stop him a few seconds after the overhead patrol lights were activated.
The dash cam video from the officer's patrol car was admitted into evidence and played for the court. The video showed Clark's vehicle passing in front of the officer's patrol car approximately one second after the officer activated the overhead patrol lights. The video also shows Clark's car does not appear to be very near to the patrol car as it passes in front of it, traveling in the roadway. While the video shows Clark rolled through two stop signs, it also shows Clark applied the brakes several times and activated his blinkers before turns. The pursuit lasted about one minute. In the video, no other motorists are visible on the roadway during the brief chase, and the pursuing officer remained some distance behind Clark's vehicle.
The video shows Clark admitting to using methamphetamine prior to the incident and repeatedly saying he was on his way to pick up drugs. At one point in the video, the officer asked Clark why he reversed his vehicle, and Clark responded that he did not know who or what the officer was when the spotlight came on. Clark said he was scared and had had trouble in the past with people on that road.
The officer testified that there were no vehicles on the road besides Clark's and his patrol car. The officer admitted there was no evidence that anybody's life was in danger during the brief chase except his own.
Clark testified that he was leaving the area after getting high, and when he pulled up to a stop sign, the deputy scared him when he turned his headlights on. Clark indicated he opened his door, so he could back up and turn around, but then the officer "hit [him] with his spotlight" and he "took off." Clark testified he did not know the other vehicle was law enforcement at that time. Clark indicated he did not realize he drove toward the deputy's vehicle or recall going near the deputy's vehicle. Clark denied it was his intent to threaten the deputy, hit him, or run him over. Clark confirmed he knew at some point later that an officer was attempting to detain him. Clark testified he did not believe he drove the car in such a way that it would be considered a deadly weapon and denied trying to hurt anybody with the car. Nevertheless, Clark confirmed he knew there was a police officer behind him, and he saw the overhead patrol lights once they were activated. Clark indicated he did not pull over because he did not want to return to jail. Clark ultimately admitted he was on his way to retrieve drugs from gang members.
Standard of Review
Clark argues the evidence is legally and factually insufficient to support the trial court's affirmative finding on the deadly weapon issue.[1] When there is a *372 challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. See Brooks v. State , 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ) (concluding the Jackson standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citations omitted). The factfinder is the sole judge of the witnesses' credibility and weight to be given to their testimony. Tate v. State , 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citations omitted). A factfinder may draw multiple reasonable inferences so long as each inference is supported by the evidence presented at trial. Hooper , 214 S.W.3d at 15. Accordingly, we are required to defer to the factfinder's determinations of weight and credibility of the witnesses. See Brooks , 323 S.W.3d at 899. As we noted in another case involving a deadly weapon finding, "[o]ur duty, as a reviewing court, is not to reweigh the evidence from reading a cold record but to act as a 'due process safeguard ensuring only the rationality of the factfinder.' " Brister v. State , 414 S.W.3d 336, 342 (Tex. App.-Beaumont 2013, pet. granted) ( Brister I ), aff'd , 449 S.W.3d 490 (Tex. Crim. App. 2014) ( Brister II ) (quoting Williams v. State , 937 S.W.2d 479, 483 (Tex. Crim. App. 1996) ).
Analysis
Ultimately, we must determine, in viewing the evidence in the light most favorable to the verdict, whether a rational factfinder could find beyond a reasonable doubt that Clark used or exhibited his vehicle as a deadly weapon when he was evading arrest or detention. See Sierra v. State , 280 S.W.3d 250, 255 (Tex. Crim. App. 2009) (citing Cates v. State , 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) ). To be legally sufficient to sustain a deadly weapon finding, the evidence must show: "(1) the object was something that in the manner of its use or intended use was capable of causing death or serious bodily injury; (2) the weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were actually endangered." Brister I , 414 S.W.3d at 342 (citing Drichas v. State , 175 S.W.3d 795, 797 (Tex. Crim. App. 2005) ( Drichas I ), remanded to 219 S.W.3d 471 (Tex. App.-Texarkana 2007, pet. ref'd) ( Drichas II ); Garza v. State , 298 S.W.3d 837, 843 (Tex. App.-Amarillo 2009, no pet.) ); see also Cates , 102 S.W.3d at 738. While the danger to motorists must be actual and not merely hypothetical, it does not require pursuing officers or other motorists to be in a zone of danger, take evasive action or require a collision. Drichas I , 175 S.W.3d at 799. If a motor vehicle is used in a manner making it capable of causing death or serious bodily injury, it may become a deadly weapon. Id. ; Tyra v. State , 897 S.W.2d 796, 798 (Tex. Crim. App. 1995) ; Ex parte McKithan , 838 S.W.2d 560, 561 (Tex. Crim. App. 1992) (citation omitted). Despite Clark's testimony that he was not trying to hurt the officer, a defendant is not required to have the specific intent to use a motor vehicle as a deadly weapon. See Drichas I , 175 S.W.3d at 798 (citing McCain v. State , 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) ; Walker v. State , 897 S.W.2d 812, 814 (Tex. Crim. App. 1995) ).
The Texas Court of Criminal Appeals has explained they "do not suggest *373 that a defendant should be charged with using a vehicle as a deadly weapon every time the offense of evading arrest or detention is committed[,]" rather, it is a fact-specific inquiry, and the facts may or may not support such a finding. Id. at 799. In the present case, the State had to show that Clark drove his vehicle in a manner capable of causing death or serious bodily injury while evading arrest or detention. See id. ; Cates , 102 S.W.3d at 739. Clark contends the evidence is insufficient to support the deadly weapon finding during the commission of the offense. After reviewing the evidence in the light most favorable to the trial court's finding, we agree.
In Cates , the Court of Criminal Appeals examined whether the evidence was sufficient to support an affirmative finding of a motor vehicle being used as a deadly weapon during the offense of failing to stop and render aid. 102 S.W.3d at 736. The Court noted the gravamen of the offense of failure to stop and render aid was leaving the scene of the accident. Id. at 738. "Therefore, the relevant time period for determining whether his truck was used and exhibited as a deadly weapon is the time period after [the victim] was hit." Id. Witnesses at the scene chased the defendant when he failed to stop, and those witnesses testified they traveled at speeds of 85 to 90 miles per hour as they chased the vehicle. Id. The Court pointed out that there was no other traffic on the road at the time, and there was no evidence in the record that anyone was in actual danger from the truck while it left the scene of the accident. Id. The Court explained that facts occurring before and after an offense can be relevant circumstantial evidence of the offense charged. Id. at 739. In concluding the evidence was insufficient to support the deadly weapon finding, the court reasoned there was no evidence indicating the truck was driven in a deadly manner during the offense of failure to stop and render aid. Id.
"A person commits an offense [of evading arrest or detention with a motor vehicle] if he intentionally flees from a person he knows is a peace officer or a federal special investigator attempting lawfully to arrest or detain him. " Tex. Penal Code Ann. § 38.04(a) (emphasis added). When Clark drove his vehicle in such a manner that it allegedly exited the roadway and headed directly toward the officer's vehicle, an act that endangered the officer, the officer admittedly had not yet attempted to arrest or detain Clark. Clark testified that he had no idea the other vehicle was a law enforcement officer when the officer spotlighted him, which was corroborated by Clark's statements captured on video at the scene. Moreover, the officer explained that he spotlighted the vehicle to see who the driver was, and he had not turned on his overhead patrol lights at that point. Consistent with Clark's testimony, the officer is overheard on the video describing the incident to his supervisor and stating "at that point all I did was just spotlight him." The arresting officer can also be heard on video stating that Clark "turn[ed] that corner almost running over mailboxes coming straight at my vehicle.... So, at that point, I'm like this [isn't] right, ... so, I get behind him, and all of a sudden, he just takes off." The evidence is that the officer did not attempt to detain or pull Clark over until after Clark nearly ran into him. Because the evidence conclusively established that law enforcement had not yet attempted to detain or arrest Clark when he allegedly ran off the road and almost struck the deputy's vehicle, Clark was not evading arrest or *374 detention at that time.[2]
The evidence indicated the point in time at which the officer attempted to detain or arrest Clark was when he activated his overhead patrol lights. Therefore, we must determine whether there was sufficient evidence to support an affirmative deadly weapon finding from the point in time after the officer activated his overhead patrol lights. At trial, the officer expressly denied that Clark tried to evade him when he first activated the overhead patrol lights. In fact, the deputy testified that he believed Clark became aware the officer was trying to stop him three seconds after the overhead patrol lights were activated. We therefore must determine if the evidence, when viewed in the light most favorable to the verdict, could support a determination by a rational factfinder that Clark used his vehicle as a deadly weapon after the officer's overhead patrol lights were activated.
The danger to others must be actual and not merely hypothetical. See Brister II , 449 S.W.3d at 495 ; Sierra , 280 S.W.3d at 254, 256 ; Drichas I , 175 S.W.3d at 797. The volume of traffic on the road is relevant if no traffic exists. Drichas I , 175 S.W.3d at 799 (citing Williams v. State , 946 S.W.2d 432, 435, rev'd in part on other grounds , 970 S.W.2d 566 (Tex. Crim. App. 1998) ). The officer testified that by the time he turned on his overhead patrol lights, Clark's vehicle had reentered the roadway. This is consistent with video evidence which showed the officer's overhead patrol lights were activated a moment before Clark's vehicle passes in front of the patrol car. The video depicts Clark's vehicle traveling in the roadway proper as it passed the patrol car. The video showed that after the officer activated his overhead patrol lights, Clark did not stop, but instead accelerated. There was evidence that during the brief chase Clark rolled through stop signs and was speeding, but the video also showed Clark using his blinkers and hitting his brakes several times. Most importantly, the evidence conclusively established there were no other vehicles on the roadway during the brief period between the time the officer activated his overhead lights and when Clark crashed his vehicle into the ditch.
It is established that others being placed in actual danger includes peace officers. Drichas II , 219 S.W.3d at 476 n.5. "However, being mindful of the requirement that an actual, rather than hypothetical, person be endangered, we do not believe evidence of pursuing police officers, without more, establishes such endangerment." Id. Although evidence established that Clark sped through a subdivision, and the deputy estimated Clark's speed at twice the limit, there were no other motorists in his immediate vicinity. See Foley v. State , 327 S.W.3d 907, 917 (Tex. Crim. App.-Corpus Christi 2010, pet. ref'd ) (mem. op.) (rejecting deadly-weapon finding when there was no evidence in the record that a person or vehicles were "in the immediate vicinity of [Appellant]'s crash"). While in pursuit, the officer was some distance behind Clark, who ultimately crashed into a ditch without encountering any other vehicles. See *375 Cates , 102 S.W.3d at 739 ; Foley , 327 S.W.3d at 917 ; Drichas II , 219 S.W.3d at 476 n.5. The video footage does not reveal that the pursuing officer was in actual danger while Clark evaded arrest. See Cates , 102 S.W.3d at 739 ; Drichas I , 175 S.W.3d at 799. If we conclude this evidence was sufficient to justify an affirmative deadly weapon finding, then a deadly weapon finding would be appropriate in every evading arrest or detention case. The Court of Criminal Appeals has squarely rejected that notion. See Drichas I , 175 S.W.3d at 799 ; Drichas II , 219 S.W.3d at 476 n.5.
There are circumstances warranting an affirmative deadly-weapon finding by the use of a motor vehicle where police officers are the only ones on the roadway; however, the evidence is insufficient to support an affirmative finding in this particular case. The trial court reasoned the affirmative finding was because Clark "is going at least 60, if not more, and he kind of blows through two stop signs in a residential area." The trial court also pointed out "he skidded out and went into a ditch, which luckily there was nobody else coming. " (Emphasis added.) The trial court noted "it wasn't the most egregious driving [she had] ever seen." We find this statement significant, particularly considering the scant evidence to support its affirmative deadly weapon finding. The State failed to present evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that people were placed in actual danger by Clark's operation of the vehicle during the offense for which he was charged. See Drichas I , 175 S.W.3d at 798 ; Brister I , 414 S.W.3d at 344 ; Foley , 327 S.W.3d at 917.
Conclusion
Because the evidence was insufficient to support a conclusion that Clark used a vehicle as a deadly weapon during the commission of the offense of evading arrest or detention with a motor vehicle, we sustain his sole issue. Therefore, we strike that portion of the judgment wherein the trial court found as true that Clark used or exhibited a deadly weapon and affirm the judgment as modified.
AFFIRMED AS MODIFIED.

Although Clark complains of factual insufficiency, Texas has long recognized the legal sufficiency standard as outlined in Jackson v. Virginia as the only standard reviewing courts should employ in determining whether the evidence is sufficient to support each element of a criminal offense beyond a reasonable doubt. See Jackson v. Virginia , 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; Brooks v. State , 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

The fact that a vehicle is driven in a deadly manner before the offense could assist the trier of fact if it were coupled with other evidence of how the truck was driven during the offense. Cates v. State , 102 S.W.3d 735, 739 (Tex. Crim. App. 2003). Absent evidence of the vehicle's use or exhibition as a deadly weapon during the offense, the evidence of how it was driven prior is not sufficient to sustain the deadly weapon finding. Id. When there is no evidence an appellant caused another vehicle or person to be in actual danger, "there [is] no reasonable inference that appellant used his motor vehicle as a deadly weapon." Brister v. State , 449 S.W.3d 490, 494 (Tex. Crim. App. 2014) (Brister II ).