In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00256-CR
_____

PHILLIP EUGENE JACKSON, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 17-12-14785-CR

_____

**MEMORANDUM OPINION**

Appellant Phillip Eugene Jackson appeals his conviction for evading arrest or detention with a vehicle, arguing that the evidence was not sufficient to support the deadly weapon finding. *See* Tex. Penal Code Ann. § 38.04(b)(2) (West 2016); Tex. Code Crim. Proc. Ann. art. 42A.054 (West 2018).[1] The jury found Jackson guilty of

[1] We cite current versions of the statutes as amendments to the statutes made after Jackson's offense do not affect our disposition.

1

the offense of evading arrest or detention with a vehicle, found he was previously convicted of a prior felony offense, and assessed his punishment at confinement in the institutional division of the Texas Department of Criminal Justice for fifteen years.

Evidence at Trial

A grand jury indicted Jackson for

> . . . intentionally flee[ing] from Officer P. Caughman, a person the defendant knew was a peace officer attempting lawfully to arrest or detain the defendant, and the defendant used a vehicle while the defendant was in flight,
> And . . . that during the commission of the primary offense alleged above, the Defendant did then and there use or exhibit a deadly weapon, to wit: a motor vehicle[.]

Jackson pleaded "not guilty."

<u>Testimony of Officer Paul Caughman</u>

Officer Paul Caughman testified at trial and explained that he was working patrol for the Conroe Police Department on December 2, 2017. According to Caughman, prior to the incident with Jackson, Caughman had been called to a disturbance call where "everybody at the house was intoxicated[]" and where he observed a silver Jetta in the driveway. Caughman testified that he told the people at the house not to drive because they were intoxicated.

Caughman testified that he saw the Jetta later, at about 3:25 in the morning, when "it was traveling at a high rate of speed[,]" going eighty-five miles per hour in a location where the posted speed limit was fifty-five. Caughman identified the defendant as the person driving the Jetta that night. Caughman explained that equipment in his patrol car tracks the speed of nearby vehicles, but only when the other vehicle's speed is three-to-four miles per hour different than his.

Caughman testified that he activated the lights and siren on his vehicle when pursuing Jackson onto Interstate 45. According to Caughman, he believed that Jackson was fleeing based on the way he accelerated getting onto the freeway and how he moved around vehicles to avoid Caughman. Caughman testified that on the freeway, his vehicle and Jackson's vehicle reached a speed of approximately 130 miles per hour, but that the equipment in his vehicle did not pick up Jackson's speed because it was so close to his own, and the equipment picked up the speed of other vehicles the two passed on the road. Officer Caughman stated that Jackson's rear-facing lights were turned off during at least part of the pursuit. According to Caughman, his pursuit of Jackson on Interstate 45 covered about fourteen miles. Ultimately, Jackson exited the freeway and coasted to a stop, at which time Caughman detained Jackson. Caughman testified that he observed a strong odor of alcohol on Jackson's breath, Jackson was swaying and his eyes were glassy, and

3

Caughman believed Jackson was intoxicated. Caughman also testified that he observed a half case of beer in Jackson's vehicle as well as "an illegal club."

Caughman testified that five or six additional police vehicles were involved in the pursuit of Jackson. In Caughman's opinion, the vehicle Jackson drove while fleeing detention that night was used as a deadly weapon and was used in a manner that posed a danger to other people on the road. According to Caughman, the way Jackson used his vehicle that night was "very dangerous[]" to other people on the road because "[v]ehicles weigh a lot. Those speeds, they take a long time to stop. And the way he was swerving in and around vehicles, he could have hit any vehicle at any time and caused a major accident." Caughman stated that Jackson was swerving and weaving in and around trucks, eighteen-wheelers, and passenger cars that night.

Testimony of Officer William Robinson

Officer William Robinson, with the Conroe Police Department, also testified that he assisted Officer Caughman during a high-speed pursuit on December 2, 2017. Robinson testified that he followed Caughman and Jackson for about ten or eleven miles, and the vehicles reached speeds "[u]pwards of 130 miles per hour." According to Robinson, Jackson made an improper turn when entering the freeway and made some "super unsafe lane changes between the 18-wheelers and civilian vehicles that

4

are just 60, 65 miles an hour, going twice their speed[.]" Robinson testified that, if Jackson had collided with another vehicle on the road at that speed, a "catastrophic wreck" would have resulted. Robinson further testified that, in responding to such a pursuit, an officer is in "[e]xtreme danger."

Testimony of Phillip Jackson

Jackson testified at trial and he agreed that he had been drinking and was intoxicated on December 2, 2017. Jackson denied that he intended to flee from the officers, and he also denied that he saw the lights on the police vehicles. Jackson testified that he did not know police officers were behind him. Jackson told the jury that it was "kind of humiliating[]" for him to watch the video of the pursuit, and he agreed he drove down the freeway "like a maniac[]" that night. Jackson agreed he was swerving all over the road and that he drove 130 miles per hour.

Other Evidence

State's Exhibit 1 was admitted into evidence and published to the jury, which Caughman confirmed was a video of the pursuit recorded from his body camera and the dash camera in his vehicle. State's Exhibit 6 was also admitted into evidence and published to the jury, and Robinson agreed that it was a video of the pursuit made from a camera in his vehicle.

The jury found Jackson guilty of evading arrest and found Jackson used a deadly weapon in the commission of the offense. The jury assessed punishment at fifteen years in prison.

## Issue on Appeal

Jackson argues that the evidence was insufficient to support a deadly-weapon finding because "no other people were actually endangered by [Jackson's] driving." Jackson argues that

> Jackson did not come perilously close to striking any other vehicles. Officer Caughman did not say that Jackson nearly struck any other cars. No other cars had to take evasive action to avoid being hit by him. Traffic was light at 3:25 in the morning, and there was a concrete barrier between oncoming traffic. Jackson did not hit anyone, and no one was injured.

Jackson further argues that a hypothetical risk of harm to others is not sufficient to support a deadly-weapon finding.

## Standard of Review

When reviewing the sufficiency of the evidence, an appellate court considers all the evidence in the light most favorable to the verdict to determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Appellate courts are required to determine whether any rational juror could

6

have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 902 n.19. An appellate court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *See Jackson*, 443 U.S. at 319, 326; *Merritt*, 368 S.W.3d at 525; *Brooks*, 323 S.W.3d at 899. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not substitute our judgment for that of the fact finder. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In our review, we consider both direct and circumstantial evidence and all reasonable inferences that may be drawn from the evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Applicable Law

Section 38.04(a) of the Texas Penal Code provides that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." Tex. Penal Code Ann. § 38.04(a). To establish a deadly-weapon finding, the State must establish that: (1) the object meets the statutory definition of a dangerous weapon; (2) the weapon was used or exhibited during the transaction from which the felony conviction was obtained; and (3) other people were actually endangered. *Drichas v.*

7

*State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Brister v. State*, 414 S.W.3d 336, 342 (Tex. App.—Beaumont 2013), *aff'd*, 449 S.W.3d 490 (Tex. Crim. App. 2014). By statutory definition, a deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2018). "'An automobile can be a deadly weapon if it is driven so as to endanger lives.'" *Brister*, 414 S.W.3d at 342 (quoting *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)). "A deadly-weapon finding is justified if a rational jury could have concluded that the appellant's vehicle posed an actual danger of death or serious bodily injury." *Id.* (citing *Sierra v. State*, 280 S.W.3d 250, 254, 256-57 (Tex. Crim. App. 2009)). Whether a deadly-weapon finding is justified is a fact-specific inquiry, and we examine the record for evidence demonstrating that others were present when the reckless driving occurred. *Id.* at 343.

While the evidence must show that the defendant was driving his vehicle in a way that placed others in actual danger, the State need not establish the motor vehicle *caused* a serious injury or death; instead, the evidence must show the defendant drove the vehicle in a way that made the vehicle *capable* of causing a serious bodily injury or death. *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008); *see also Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992). The State

8

need not establish that the defendant specifically intended to use his motor vehicle as a deadly weapon. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). Stated another way, the State can satisfy its burden by proving the defendant used the vehicle he was driving in a way that made the vehicle capable of causing a serious bodily injury or death to others. *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017).

Analysis

Both officers testified—and Jackson himself agreed—that Jackson was driving at about 130 miles per hour and that Jackson was weaving in and around other vehicles on the road. Jackson testified that he was driving "like a maniac." Officer Robinson testified that in such a pursuit, officers are in extreme danger, and that a "catastrophic wreck" would have resulted had Jackson collided with another vehicle. Officer Caughman testified that, in his opinion, Jackson used his vehicle during the pursuit as a deadly weapon and in a manner that posed a danger to other people on the road. Additionally, the jury viewed the video footage contained in State's Exhibits 1 and 6, which included footage depicting Jackson's vehicle weaving in and around other vehicles during the high-speed pursuit. Based on the evidence presented at the trial, we conclude that a rational jury could have concluded that the appellant's vehicle posed an actual danger of death or serious bodily injury

9

to others. *See Brister*, 414 S.W.3d at 342 (citing *Sierra*, 280 S.W.3d at 254, 256-57). The evidence established that Jackson drove in a dangerous manner, that Jackson was intoxicated, that Jackson drove at a high rate of speed, and that Jackson swerved in and out of traffic and that he drove around other vehicles at high speeds at the time. The jury could have reasonably concluded that under the facts Jackson created more than just a hypothetical danger to others on the road.

We find this case distinguishable from *Clark v. State*, No. 09-17-00401-CR, 2019 Tex. App. LEXIS 2371 (Tex. App.—Beaumont Mar. 27, 2019, no pet. h.). In *Clark*, we concluded the evidence did not support a deadly-weapon finding in a case involving evading arrest or detention with a motor vehicle. *Id.* at **14-15. Clark drove about sixty miles per hour through a residential neighborhood where the speed limit was thirty miles per hour, drove erratically and recklessly, ran a stop sign, and ultimately wrecked his vehicle in a ditch. *Id.* at **2-4. Nevertheless, we explained that according to the record before us "there were no other motorists in his immediate vicinity[,]" the chase was "brief[,]" and the video evidence did not reveal any danger to the pursuing officer. *Id.* at **5, 14. In the case at bar, however, the evidence shows that Jackson weaved in and around other vehicles in his path while traveling at extremely high speeds of approximately 130 miles per hour, the officers testified that the pursuit of Jackson was dangerous, and the chase lasted for several minutes

and covered about fourteen miles on the freeway with numerous police vehicles in pursuit and with lights and sirens activated. Based on this record, the jury could have reasonably concluded that the risk of danger was not hypothetical.

Viewing the evidence in a light most favorable to the verdict, we conclude that a rational finder of fact could find that Jackson used the vehicle he was driving as a deadly weapon during the commission of the offense of evading arrest or detention, and the evidence is legally sufficient to support the deadly-weapon finding. *See Sierra*, 280 S.W.3d at 256. We overrule Jackson's issue.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on April 16, 2019
Opinion Delivered May 15, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

11