In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00026-CR**
_____

**ANDREA ELAINE BUCK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court**
**Jasper County, Texas**
**Trial Cause No. JC32891**

**MEMORANDUM OPINION**

In this appeal, Andrea Elaine Buck contends the evidence is insufficient to support her conviction on a misdemeanor charge of driving while intoxicated (DWI). In one issue, Buck argues the evidence admitted during her trial is insufficient to prove she was guilty of the offense.[1] After reviewing the evidence before the jury in Buck's trial, we affirm Buck's conviction for DWI.

---

[1] *See* Tex. Penal Code Ann. § 49.04(a), (b) (West Supp. 2018).

Background

In October 2014, Robert Shugart, a sergeant employed by the Texas Department of Public Safety, saw a car fail to stop at a stop sign at an intersection in Jasper County, Texas. Although he was not on duty, Sergeant Shugart stopped Buck's car. When Sergeant Shugart encountered Buck, she apologized for having failed to obey the sign. During the encounter, Sergeant Shugart noticed that Buck did not seem normal, which made him believe Buck might be intoxicated. Because he was in an unmarked car, which was not equipped with a camera, Sergeant Shugart called Officer Lester McCray to come to the scene where he stopped Buck's car.

When Officer McCray came to the scene, he took charge of the investigation into whether Buck was intoxicated. When Officer McCray spoke to Buck, she told him she usually took medications for anxiety but denied taking any medications that day. Buck told Officer McCray she was not intoxicated. Next, Officer McCray gave Buck a standardized field sobriety test. After finishing the various components of the standardized test, Officer McCray arrested Buck for DWI. Notably, Officer McCray never asked a magistrate to issue a search warrant so that he could obtain a specimen of Buck's blood and have it tested for the presence of alcohol and drugs.

After Officer McCray put Buck in his police car, she continued to deny that she was intoxicated. Officer McCray took Buck from the scene to a nearby hospital.

While in his car, Officer McCray asked Buck to provide police with a sample of her blood but she refused. Then, Officer McCray took Buck to jail.

In November 2014, the State filed an information alleging that Buck, while driving her car, did not have the normal use of her mental and physical faculties.[2] In June 2017, the parties tried the case before a jury. Four witnesses testified in the trial: Sergeant Shugart, Officer McCray, Buck, and James Mitchell, Buck's ex-husband. The trial court admitted several exhibits in the trial, including a dashcam video of Buck's standardized field sobriety test.

Both Sergeant Shugart and Officer McCray testified that Buck was intoxicated at Buck's trial. Sergeant Shugart described Buck's behavior when he approached her following the stop. He explained he thought Buck's ability to control her faculties had been impaired because she was under the influence of either a central nervous system stimulant or a depressant. He explained that Buck's behavior switched quickly between being angry and cooperative, a trait he found "very common" in individuals under the influence of stimulants, depressants, or cannabis. Officer McCray testified that he thought Buck was under the influence of "some

---

[2] *See id.* § 49.01(2)(A) (West 2011); *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (explaining that the State may prove intoxication in either of two ways: (1) the "impairment" theory, that is the loss of normal use of mental or physical faculties, or (2) the "per se" theory, that is by proving the defendant had an alcohol concentration in her blood, breath, or urine of .08 or more).

type of drug" based on his investigation, which consisted mainly of the standardized field sobriety test that he gave Buck.

Buck and Mitchell testified in Buck's defense. In her testimony, Buck acknowledged that she ran the stop sign, did not act normally after being detained, and failed some parts of the standardized field sobriety test. Buck attributed her demeanor that day and performance on the test to back problems and being "tired, sick, and angry." Buck offered her medical record of the treatment she received from a doctor shortly before she was stopped. That record shows the doctor prescribed Buck three types of medications: an antibiotic, a medication for her back pain, and a medication for anxiety.

Around an hour after Buck left the doctor's office, she was stopped for running the sign. Mitchell came to the scene to pick Buck's car up so it would not need to be towed. Mitchell's testimony was not particularly probative on whether Buck was intoxicated when the stop occurred, as he had been at work all day. The jury, however, might have considered some of his testimony as favoring the State. For instance, Mitchell testified that when he got Buck out of jail, "she was [not in] very good shape." On the other hand, Mitchell also testified that when he saw Buck the night before she was stopped, "as far as [he knew], she was in [a] normal

4

condition." Mitchell agreed he had no information about Buck's "level of intoxication at [the] time" she was stopped.

After the parties rested, the trial court gave the jury its charge, which asked the jury to decide whether Buck was intoxicated based on "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body[.]"[3] The jury found Buck guilty.

## Analysis

In her appeal, Buck argues the evidence is insufficient to support the jury's finding that she was driving while intoxicated. When reviewing a challenge to the sufficiency of the evidence, we determine whether, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[4] In our review, each fact need not point independently to the defendant's guilt if the cumulative force of

---

[3] *See id.* § 49.01(2)(A) (the definition for "intoxicated" when the State employs the impairment theory when charging the defendant with committing the DWI).

[4] *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

5

all the incriminating circumstances is sufficient to support the jury's verdict.[5] At trial, the State may rely on circumstantial evidence to prove intoxication, and if the evidence admitted in the trial is circumstantial, that evidence can be just as probative as direct evidence to establish that a defendant is guilty.[6] In fact, circumstantial evidence alone can support a jury's verdict.[7] When a jury is used to decide the case, it acts as the sole judge of the credibility of the witnesses and the weight to afford any testimony.[8] As a reviewing court, our role "is simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged."[9]

To establish a defendant is guilty of DWI, the State must prove the person was intoxicated while operating a vehicle in a public place.[10] The Penal Code defines "[i]ntoxicated" as "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

[9] *Id.*

[10] Tex. Penal Code Ann. § 49.04(a).

drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more."[11] In her appeal, Buck argues the evidence did not establish she was intoxicated for three reasons: (1) Officer McCray failed to conduct a breath or blood test to confirm whether alcohol or drugs were present in her body; (2) Officer McCray made various mistakes when conducting the standardized field sobriety test, rendering the results of the test unreliable; and (3) the dashcam video the jury considered in the trial shows that Buck had adequate control over her physical and mental faculties at the scene.

We address each of the arguments Buck advances to support her claim that the verdict should be reversed. While Buck argues the State failed to obtain a sample and test her blood when investigating her offense, the State is not required to introduce scientific evidence in a DWI case when using the impairment theory of intoxication in the defendant's trial. For example, a jury may rely on the opinion elicited from an experienced police officer stating that a person was intoxicated when the officer based his opinion on what he personally observed about the defendant during the encounter that resulted in the defendant's arrest.[12] As a

---

[11] *Id.* § 49.01(2)(A), (B) (West 2011).

[12] *See Annis v. State*, 578 S.W.2d 406, 407 (explaining that an experienced police officer's testimony that a person was intoxicated along with facts consistent with intoxication that the officer personally observed is sufficient evidence to support the jury's verdict finding the defendant guilty of DWI); *Fryer v. State*, No.

reviewing court, our role is not to reweigh the evidence or the credibility the jury chose to give the evidence it was asked to consider in the trial.[13] As the factfinder, "the jury [was] entitled to judge the credibility of witnesses" and "to believe all, some, or none of the testimony presented by the parties."[14]

Here, the jury could have rationally concluded from the evidence that Buck was intoxicated based on what it saw when viewing the dashcam video of Buck's stop and Officer McCray's opinion that Buck was intoxicated given the observations he made of Buck as he described them in the trial. The dashcam video allowed the jury to conclude that Buck did have trouble following Officer McCray's instructions. While the video does not depict Buck swaying or falling down, nor is Buck heard in the audible portion of the video slurring her words, the video provides supporting evidence for the officers' respective opinions that Buck did not have normal control over her faculties when they encountered her during the stop. Furthermore, Buck

14-18-00381-CR, 2019 Tex. App. LEXIS 4438, at *2 (Tex. App.—Houston [14th Dist.], May 30, 2019, no pet. h.) ("Evidence of blood alcohol concentration or field sobriety tests is not necessary to sustain a conviction for DWI."); *Brister v. State*, 414 S.W.3d 336, 341 (Tex. App.—Beaumont 2013) ("When based upon facts an experienced officer observes and then describes to the jury, an officer's opinion concerning a person's intoxication provided sufficient evidence of intoxication."), *aff'd*, 449 S.W.3d 490 (Tex. Crim. App. 2014).

[13] *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

[14] *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

refused Officer McCray's request for a specimen of her blood.[15] Buck's refusal to provide a specimen is yet one more factor the jury could rely on when it concluded that Buck was intoxicated.[16] The evidence established that Officer McCray is an experienced state trooper, that he conducted a standardized field sobriety test on Buck, and the jury heard the officer testify that he believed Buck was intoxicated based in part on his personal observations of her before her arrest.[17] While Buck's brief suggests that Officer McCray failed to administer the standardized field sobriety test properly, she never objected during the trial to his testimony about the results of the test.

---

[15] After Office McCray took Buck from the scene of the stop to the hospital, she agreed to provide police with a specimen of her breath but not of her blood. She stated that if the breath test detected alcohol, she would agree to provide a specimen of her blood. In response to her offer, Officer McCray told Buck he wanted a specimen of her blood, not her breath, because he thought she was "on something more than alcohol."

[16] *See* Tex. Transp. Code Ann. § 724.061 (West 2011) (providing that evidence of a person's refusal to submit to an officer's request for a blood or breath specimen is admissible in a trial); *Griffith v. State*, 55 S.W.3d 598, 601 (Tex. Crim. App. 2001) (explaining that sometimes the reason a defendant refuses a request by police for a biological specimen is relevant to the defendant's consciousness of guilt).

[17] Officer McCray testified in the trial that he had been trained by the Department of Public Safety in conducting the standardized field sobriety test. When Buck was stopped, Officer McCray had been a state trooper for just over twelve years.

Last, Buck asserts the jury's conclusion was not rational given the control she had over her physical and mental faculties as she contends can be seen in the dashcam video. Buck suggests that her behavior at the scene and the results of her standardized field sobriety test can be explained by the evidence showing that she had not taken her usual medications on the day of the stop. She also claims she was ill and suffering with back pain that day. Nevertheless, the jury viewed the video, and from its verdict, we infer the jury rejected Buck's arguments about what the video shows.

Here, the record contains enough evidence to allow a reasonable jury to have convicted Buck of DWI.[18] Accordingly, we overrule Buck's sole issue and affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 11, 2019
Opinion Delivered July 10, 2019
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[18] *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. 2013) (citing *Jackson*, 443 U.S. at 326).