In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00259-CR
_____

**MICHAEL ALLEN MARTZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-09-11327-CR**

**MEMORANDUM OPINION**

In four appellate issues, Michael Allen Martz contends his conviction for felony driving while intoxicated should be reversed.[1] Martz argues that (1) he

_____

[1] Martz's indictment, filed in December 2016, alleges that he had been convicted on six prior occasions for driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West Supp. 2018) (defining the elements of the offense of driving while intoxicated), § 49.09(b) (West Supp. 2018) (providing that a driving while intoxicated offense is a third-degree felony if the person has two prior convictions related to the operation of a motor vehicle while intoxicated).

1

received ineffective assistance of counsel because his attorney failed to take steps to remove two of the jurors from the jury that heard his case, (2) the trial court committed reversible error when it denied his motion for new trial, (3) the trial court erred when it denied his motion for directed verdict, and (4) the jury's verdict should be reversed because it is not supported by enough evidence to prove he was guilty. For the reasons explained below, we affirm.

Background

One evening in September 2016, Olivia Corona called 911 after she saw a man driving his truck in her lane of traffic on a road that runs behind a grocery store in Porter, Texas. She followed the man into the parking lot of the nearby store, where she obtained a partial license number from the temporary tag that was on the man's truck. While in the parking lot, Corona observed the man for over five minutes while he drove his truck erratically inside the parking lot. Corona saw the man make five or six attempts to park. He then parked the truck and entered the store. Corona, who had called the 911 dispatcher and had the dispatcher on the phone, described the man and how he was driving, where the man parked his truck, and told her what numbers she got from the truck's tag. Corona did not, however, remain at the scene to identify the man to the officers who came to the store.

Department of Public Safety Troopers Benjamin Polansky and Bruno Miauro responded to the call that Corona placed to 911. When they got there, they found the truck where Corona told the 911 dispatcher it would be. Based on the description of the driver, which the troopers had from the dispatcher, they found Martz inside the store. During Martz's trial, the troopers testified that Martz appeared to be intoxicated, smelled of alcohol, had bloodshot eyes, and slurred his speech when they spoke to him. Polansky took Martz outside the store, where he gave Martz the horizontal-gaze nystagmus and finger-count tests.[2] The jury viewed Trooper Polansky's dashcam video of Martz performing the field sobriety tests. According to Trooper Polansky, based on Martz's appearance, the results of the field sobriety tests, and the information Corona provided 911 about Martz's driving, he arrested Martz and charged him with driving while intoxicated (DWI).

Trooper Polansky put Martz in his patrol car and read Martz his statutory rights, including the DIC-24 Mandated Statutory Warning.[3] According to the

---

[2] The standardized field sobriety test consists of (1) the horizontal-gaze nystagmus test, (2) the walk-and-turn test, and (3) the one-leg-stand test. Trooper Polansky did not administer the walk-and-turn or the one-leg-stand tests because he did not want to evaluate the accuracy of any clues related to intoxication that might be confounded by pre-existing injuries Martz claimed that he had suffered.

[3] This testimony undoubtedly refers to the DIC-24 Mandated Statutory Warning, a warning that law enforcement officials are required to give to suspects who are arrested for DWI. *See* Tex. Transp. Code Ann. § 724.015 (West Supp.

trooper, Martz verbally consented to the trooper's request to obtain a specimen of his blood. After the troopers took Martz to a nearby hospital, a registered nurse took two blood specimens from Martz.

The blood specimens the trooper obtained from Martz were tested by the Department of Public Safety's Crime Lab in Houston. A forensic scientist employed with the Crime Lab, Katherine Brown, testified in Martz's trial. She explained that she analyzed Martz's blood specimens and determined they contained .028 grams of ethanol per 100 milliliters of blood. Brown then forwarded Martz's specimens to the Crime Lab in Austin so they could be further analyzed for the presence of drugs.

Eduardo Padilla, a forensic scientist with the Crime Lab in Austin, also testified in the trial. He explained that he analyzed the blood specimens to determine whether they showed that Martz had used marijuana. According to Padilla, the tests he conducted showed that Martz had both active and inactive ingredients of marijuana in his blood. He explained the active ingredients in marijuana can interfere with a person's ability to concentrate, to perceive situations, result in the person feeling dizzy, cause a person to slur his speech, and interfere with a person's ability to drive a car. Dan Rios, another forensic scientist with the lab in Austin, testified

---

2018). The warning advises the suspect about the consequences of refusing to consent to the trooper's request for a breath or blood specimen. *Id*.

4

that he analyzed the blood specimens to evaluate them for the presence of the benzodiazepine class of drugs. Rios testified that he found Martz's blood specimens contained alprazolam, carisoprodol, meprobamate, a metabolite of carisoprodol, and hydrocodone.

Michael Dean, a patrol sergeant with the Conroe Police Department and certified drug recognition expert, testified in the trial and addressed whether the levels of the drugs in Martz's system could impair a person's normal use of his mental or physical faculties. In general, Dean described the types of symptoms the drugs in Martz's system could cause. He stated the drugs in Martz's system were capable of impairing a person's normal use of his mental and physical faculties.

After the State rested, Martz moved for a directed verdict. He argued the State failed to present enough evidence to tie him to the truck Corona saw before calling 911. The trial court denied the motion. Next, Martz called Dr. Jimmie Valentine, a retired professor of pediatrics and pharmacology. Dr. Valentine testified that the concentrations of the six substances detected in Martz's blood specimens were not high enough to show that Martz no longer had the normal use of his mental or physical faculties when the police arrested him at the store.

On the morning of the last day of Martz's trial, a deputy informed the court and the parties about an incident that occurred after court had adjourned the day

before. During a hearing outside the presence of the jury, the deputy testified that, while he escorted Martz in shackles outside the courthouse, he saw a juror exiting the courthouse. During the hearing, the deputy testified that he did not know whether the juror leaving the courthouse noticed them or whether the juror recognized Martz, who was in street clothes at the time he was being transported to the jail. At the request of the State and Martz, the trial court took no action regarding the incident.

The jury then found Martz guilty of felony DWI. Subsequently, the trial court assessed a life sentence. Martz then filed a motion for new trial. In the motion, Martz asserted he did not get a fair trial because one of the jurors might have seen him wearing shackles. The trial court conducted an evidentiary hearing on the motion, but then allowed the motion to be overruled by operation of law.[4]

## Analysis

### *Sufficiency of the Evidence*

We begin our analysis with issues three and four since if sustained they would require the trial court's judgment to be reversed and a judgment rendered in Martz's favor. In issues three and four, Martz argues that the evidence is insufficient to support the jury's verdict. A complaint that a trial court committed error by denying

---

[4] *See* Tex. R. App. P. 21.8(c) (a motion for new trial which is not ruled on in a timely fashion is deemed to have been denied if the trial court does not issue its ruling within 75 days after imposing or suspending the defendant's sentence).

a motion for directed verdict is viewed on appeal as a challenge to the sufficiency of the evidence.[5] For that reason, we address issues three and four together.[6]

Martz presents two basic arguments to support these issues. First, he argues the trial court should have granted his motion for directed verdict because the evidence before the jury failed to prove that he was the man seen driving the truck in the parking lot. Second, Martz argues that given the levels of the drugs the Crime Lab detected in his blood, the evidence failed to prove that he was intoxicated.

When reviewing a challenge to the sufficiency of the evidence, we determine whether, "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[7] Each fact need not point directly and independently to guilt if the cumulative force of all the incriminating circumstances is sufficient to support the conviction.[8] Circumstantial evidence is as probative as direct evidence to

---

[5] *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996).

[6] Martz presents no challenge to the paragraphs in the indictment used to enhance his sentence.

[7] *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[8] *See Nisbett*, 552 S.W.3d at 262 (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

establish an actor is guilty, and circumstantial evidence alone can be sufficient to establish a person's guilt.[9] The jury is the sole judge of the credibility of the witnesses and the weight to be afforded to the testimony that it considered in the trial.[10] As a reviewing court, our role "is simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged."[11]

To establish that a person committed the offense of DWI, the State must prove that the person was intoxicated while operating a motor vehicle in a public place.[12] The Penal Code defines "[i]ntoxicated" as "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more."[13]

---

[9] *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

[10] *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

[11] *Id.*

[12] Tex. Penal Code Ann. § 49.04(a).

[13] *Id.* § 49.01(2) (West 2011).

Martz argues that there was not enough evidence before the jury to allow it to reasonably conclude that he was the person driving the truck Corona saw being driven erratically in late-September 2016. We disagree. The evidence before the jury in the trial includes a video of Martz sitting in Trooper Polansky's patrol car. In the video, Martz stated: "I'm not trying to give nobody a hard time, I just wanted to go to the grocery store and get a few things and go home….[I] had a hard time getting parked there and I came around the wrong way and had to turn around and I was trying to back in there and that's why somebody called on me." Martz informed the Trooper that he owned the truck that police found parked in the store's parking lot, and he asked the trooper to take some of his personal items, such as his cellphone, from the truck. Trooper Polansky testified that he retrieved the items Martz asked him to remove from the parked truck. We conclude that Martz's statements acknowledging he had been driving the truck, the testimony from other witnesses showing that Martz was the owner of the truck, and testimony linking Martz's truck to the one Corona saw being driven in the parking lot authorized the jury to find that Martz was driving the truck that Corona testified she saw being driven erratically in the parking lot at the store.[14] We overrule issue three.

---

[14] *See Gribble v. State*, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990) (providing that the identity of a perpetrator "may be established by an extrajudicial confession alone"); *McCann v. State*, 433 S.W.3d 642, 647-48 (Tex. App—Houston [1st Dist.]

Second, we address Martz's argument claiming the jury did not have enough evidence about the effects of the intoxicants in his blood to allow the jury to find him guilty. In Martz's case, the State did not rely on a per se theory of intoxication; instead, the State argued the evidence established that Martz had lost the normal use of his mental or physical faculties based on the combination of the alcohol and drugs in his system when they arrested him for DWI.[15]

Under Texas law, juries are authorized to infer that a person has lost the loss of the normal use of his mental or physical faculties based on circumstantial evidence. In Martz's case, the evidence shows he was seen driving erratically, had slurred speech, mumbled, had bloodshot eyes, swayed while standing, exhibited clues of intoxication after undergoing a field sobriety test, smelled of alcohol, and

---

2014, no pet.) (upholding a DWI conviction because among other corroborating circumstances, the defendant stated that the vehicle was registered to him, described "how the accident occurred," was found near the scene of the accident, and smelled of alcohol); *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd) (considering 911 caller's description that matched the defendant as evidence of the defendant's identity as the driver).

[15] Tex. Penal Code Ann. § 49.01(2); *see Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010) (holding that the State may prove intoxication in either of two ways: (1) the "impairment" theory—the loss of normal use of mental or physical faculties or (2) the "per se" theory—an alcohol concentration in the blood, breath, or urine of 0.08 or more).

admitted to recently consuming one or more intoxicating substances.[16] Furthermore, an experienced trooper testified that he thought Martz was intoxicated. The evidence is sufficient to establish that Martz was intoxicated.[17]

During the trial, Trooper Polansky testified that Martz exhibited six out of six clues of intoxication when he gave Martz a horizontal-gaze nystagmus test. According to Trooper Polansky, Martz was also unable to follow the directions the trooper gave him during a finger-count test. Trooper Polansky expressed the opinion that based on all the circumstances he gathered in his investigation he thought that Martz was intoxicated. Other evidence, presented through forensic scientists, showed that Martz had alcohol, marijuana, and four medications in his blood when he was arrested for DWI. That testimony established that the substances in Martz's blood were intoxicants capable of impairing the normal use a person would otherwise have over their physical and mental faculties.

---

[16] *See Kirsch*, 306 S.W.3d at 745; *Cotton v. State*, 686 S.W.2d 140, 142 n.3 (Tex. Crim. App. 1985).

[17] *See Annis v. State*, 578 S.W.2d 406, 407 (Tex. Crim. App. 1979) (providing that an officer's testimony that a person was intoxicated provided sufficient evidence to establish the element of intoxication); *Brister v. State*, 414 S.W.3d 336, 341 (Tex. App.—Beaumont 2013) ("When based upon facts an experienced officer observes and then describes to the jury, an officer's opinion concerning a person's intoxication provides sufficient evidence of intoxication."), *aff'd*, 449 S.W.3d 490 (Tex. Crim. App. 2014).

Martz argues the evidence is insufficient to establish intoxication because the level of each of the medications in his system was within the therapeutic range for each of those drugs. He further notes the alcohol level in his blood was below the legal limit. Martz relies heavily on the testimony of his expert, Dr. Valentine, who explained that the types of medications in Martz's system were not at levels sufficient to impair a person's ability to drive. The jury was not required to reach a verdict consistent with Dr. Valentine's testimony, as the State relied on an impairment theory of intoxication in Martz's trial.[18] The jury could reasonably reject Dr. Valentine's testimony based on the physical signs of impairment that the testimony shows Martz exhibited when the police arrested him at the store.[19] Refusing to give Dr. Valentine much weight is logical since he never addressed the synergistic effects of the multiple medications that were detected in Martz's blood. Furthermore, Dr. Valentine agreed that marijuana has no therapeutic range. We conclude the evidence authorized the jury to convict Martz of DWI. We overrule Martz's fourth issue.

---

[18] *See Nesbitt*, 552 S.W.3d at 262.

[19] *See Fitts v. State*, 982 S.W.2d 175, 186 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (providing that the jury must determine the appropriate weight to accord expert testimony, and that the jury may reject such testimony "if it fails to comport with the jurors' concepts of sound logic").

*Motion for New Trial*

In issue two, Martz argues the trial court abused its discretion by denying his motion for new trial. In the motion, Martz argued that he was entitled to a new trial because one of the jurors possibly saw him in shackles as he left the courthouse before the jury decided his case. Before reaching the merits of the arguments Martz raises in issue two, we must decide whether he preserved the error for our review.[20]

The record before us in Martz's case shows that Martz failed to ask for a mistrial or to lodge a timely and specific objection when he was in the trial court regarding the juror who might have seen him in shackles. The Court of Criminal Appeals has recognized that a defendant's constitutional right to a fair trial by an impartial jury is "subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy."[21]

The record also shows that, during the trial, Martz and his trial attorney were aware that a juror possibly saw Martz leaving the courthouse in shackles. In a hearing to address the incident, Martz's attorney told the court that he and his client wanted

---

[20] *See Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012) ("An appellate court 'may not *reverse* a judgment of conviction without first addressing any issue of error preservation.'") (quoting *Meadoux v. State*, 325 S.W.3d 189, 193 n.5 (Tex. Crim. App. 2010)).

[21] *See State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008).

to complete Martz's trial without anyone mentioning anything to the jury about the incident. Under the circumstances, the record shows that Martz was aware of the problem, that he did not object to going forward, and that he wanted the existing jury to reach a verdict in his case. On this record, we conclude that Martz affirmatively waived any complaint he had about the juror remaining on the jury.[22] We overrule Martz's second issue.

*Ineffective Assistance of Counsel*

In his first issue, Martz argues he received ineffective assistance of counsel. According to Martz, his attorney was ineffective for two reasons. First, when selecting the jury, Martz's trial attorney failed to strike a member of the array who ended up being on the jury. Martz claims his attorney should have exercised a strike on the prospective juror because she indicated during voir dire that she had a family member who was killed by a drunk driver. Second, Martz argues his attorney was ineffective because he failed to ask the trial court to take remedial measures to

---

[22] *See Estelle v. Williams*, 425 U.S. 501, 512-13 (1976) (explaining that while the Fourteenth Amendment prohibits the State from compelling the defendant to be tried while wearing identifiable prison clothes, "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation"); *Mitchell v. State*, 989 S.W.2d 747, 749 (Tex. Crim. App. 1999) (explaining that "*Estelle* suggests it may sometimes be sound defense strategy for a defendant to stand trial in jail clothes which is why *Estelle* decided a defendant must object to being tried in jail clothes before he may later complain about it").

14

address the problem created when one of the jurors possibly saw Martz outside the courthouse in shackles.

To establish a claim of ineffective assistance of counsel, the defendant must show that the performance of his attorney fell below an objective standard of reasonableness, and that, but for counsel's alleged error, the outcome of the proceedings would probably have been different.[23] When making an ineffective assistance of counsel claim, the defendant bears the burden of developing the facts necessary to meet the burden to show the defendant received ineffective assistance under the standards identified in *Strickland*.[24] Generally, to prove a claim of ineffective assistance, the defendant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."[25]

If the defendant failed to raise his claim of ineffective assistance in the trial court, the record on direct appeal will rarely be sufficient to allow the defendant's to

---

[23] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[24] *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (citing *Strickland*, 466 U.S. at 689).

[25] *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (quoting *Strickland*, 466 U.S. at 690).

appeal to show whether the trial attorney's alleged errors violated the standards in *Strickland.*[26] Ordinarily, the defendant's trial attorney should "'be afforded an opportunity to explain his actions before being denounced as ineffective.'"[27] When the trial attorney's explanation is not in the record before the appellate court, and unless the record demonstrates the conduct at issue was "'so outrageous that no competent attorney would have engaged in it[,]'" the appellate court should not find the attorney provided the defendant with ineffective assistance.[28]

Martz's trial attorney was not called or questioned in the trial court about why he made the decisions that Martz criticizes in his appeal. Moreover, the record that is before us suggests the attorney's decisions were based on trial strategy. Martz and his attorney liked the jury they had and did not want to have anyone inquire about whether Martz was seen in shackles.

Martz's criticism about his attorney's failure to exercise his strikes in the manner Martz now claims they should have been exercised is also conduct that Martz's trial attorney should have been given the chance to explain in the court

---

[26] *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012) (citing *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

[27] *Id.*

[28] *Id.*

below. In jury selection, the prospective juror, who ended up being seated as one of the jurors, indicated that her son's father-in-law was killed by a drunk driver in 2010. When Martz's attorney asked whether that would make it difficult for her to be fair and objective, she responded: "No."

We conclude Martz failed to meet his burden of proof to show that he received constitutionally ineffective assistance of counsel. For that reason, we overrule his first issue.

Conclusion

Having overruled each of Martz's issues, we affirm the trial court's judgment. AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 12, 2018
Opinion Delivered June 12, 2019
Do Not Publish

Before Kreger, Horton and Johnson, JJ.